IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| **BRANDY DUNCAN,** | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | } CASE NO.: |
| | } JURY TRIAL DEMANDED |
| **THE GILDED OAK CORPORATION., LEBRON FOWLER, and TIM JONES d/b/a BADCOCK HOME FURNITURE & MORE,** | } |
| | } |
| | } |
| | } |
| Defendants. | } |

## COMPLAINT

**COMES NOW** the Plaintiff, Brandy Duncan ("Ms. Duncan" or "Plaintiff"), by and through undersigned counsel, Law Office of James W. Friauf, PLLC, and for her Complaint against Defendants The Gilded Oak Corporation ("Gilded Oak"), LeBron Fowler ("Fowler"), and Tim Jones ("Jones ") d/b/a Badcock Home Furniture & more (collectively, "Defendants") avers as follows:

### I. PARTIES

1.  Plaintiff Brandy Duncan is a former, female employee of The Gilded Oak Corporation, Lebron Fowler, and/or Tim Jones d/b/a Badcock Home Furniture & more. Ms. Duncan is a resident citizen of the State of Tennessee, County of McMinn. At the time of Plaintiff's separation of employment, Plaintiff was a qualified individual with a disability who was otherwise able to perform the essential functions of her job with or without a reasonable accommodation or was otherwise regarded by Defendants as having a disability.

2.  Prior to August 6, 2016, The Gilded Oak Corporation was a domestic, for-profit corporation organized pursuant to the laws of Tennessee. On August 6, 2016, the Tennessee Secretary of State administratively dissolved The Gilded Oak Corporation. On September 18, 2017, The Gilded Oak Corporation

1

was reinstated as a domestic, for-profit corporation organized pursuant to the laws of Tennessee. At all times material hereto, The Gilded Oak Corporation maintained its principal place of business in Cleveland, Tennessee.

3. At all times material hereto, Gilded Oak was a franchisee of Badcock Home Furniture & More ("Badcock") and was engaged in the sale of home furnishings. Gilded Oak transacted business in the state of Tennessee, County of Bradley. Gilded Oak may be served via its registered agent, United States Corporation Agents, Inc., 3903 Volunteer Drive, Suite 203, Chattanooga, Tennessee 37416-3860.

4. Upon information and belief, during times material hereto, LeBron Fowler was a shareholder of The Gilded Oak Corporation and was the General Manager of The Gilded Oak Corporation's Cleveland, Tennessee store.

5. Upon information and belief, from August 6, 2016, to September 18, 2017, LeBron Fowler was a general partner with Tim Jones d/b/a as The Gilded Oak Corporation. Accordingly, Fowler may be held personally liable for all of The Gilded Oak Corporation's illegal conduct during the referenced period.

6. Upon information and belief, from August 6, 2016, to September 18, 2017, Tim Jones was a general partner with LeBron Fowler d/b/a as The Gilded Oak Corporation. Accordingly, Jones may be held personally liable for all of The Gilded Oak Corporation's illegal conduct during the referenced period.

II. **JURISDICTION AND VENUE**

7. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-6 herein, inclusive.

8. This action arises from Defendants': (i) disability discrimination and failure to reasonably accommodate in violation of the Americans With Disabilities Act Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101, *et seq*.; (ii) sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*.; and (iii) unlawful failure to pay overtime wages in violation of the Fair Labor

Standards Act of 1938 ("FLSA"), 29 U.S.C. § 207. The Court has jurisdiction over this matter. 28 U.S.C. § 1331.

9. The remaining causes of action averred herein are so related to the claims within the original jurisdiction of this Court so as to form part of the same case or controversy. Accordingly, the Court has supplemental jurisdiction over Plaintiff's claims of disability discrimination in violation of the Tennessee Disability Act ("TDA"), Tenn. Code Ann. § 8-50-103 and sex discrimination in violation of the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-401, *et seq*.

10. A substantial part of the events or omissions giving rise to this matter occurred in Bradley County, Tennessee. Venue is proper. 28 U.S.C. § 1391(b)(2).

11. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination by Defendants violated the ADAAA and Title VII. **[See Exhibit "1" attached hereto and incorporated herein by reference]**. Plaintiff requested and received a right-to-sue letter from EEOC dated October 26, 2017. **[See Exhibit "2" attached hereto and incorporated herein by reference]**.

### III. GENERAL ALLEGATIONS

12. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-11 herein, inclusive.

13. At times material hereto, Fowler was a shareholder of Gilded Oak and General Manager of Badcock Home Furniture & More located at 850 25th NW, Cleveland, Tennessee 37311 ("Cleveland Badcock"), a franchisee of Badcock owned and operated by Gilded Oak. In the alternative, at times material hereto, and specifically from August 6, 2016, to September 18, 2017, Fowler was a partner/owner of a general partnership doing business as The Gilded Oak Corporation due to a lapse in The Gilded Oak Corporation's status as a domestic, for-profit corporation.

14. At times material hereto, Jones was a shareholder of Gilded Oak and General Manager of Badcock Home Furniture & More located at 921 Decatur Pike, Athens, Tennessee 37303 ("Athens Badcock"), a franchisee of Badcock owned and operated by Gilded Oak. In the alternative, from August 6, 2016, to September 18, 2017, Jones was a partner/owner of a general partnership doing business as The Gilded Oak Corporation due to a lapse in The Gilded Oak Corporation's status as a domestic, for-profit corporation.

### A. Plaintiff's employment begins.

15. On or about July 27, 2016, Fowler hired Plaintiff to serve as the "Assistant Manager" of Cleveland Badcock.

16. On August 19, 2016, after working for Defendant less than two (2) weeks, Plaintiff's check stub incorrectly indicated Plaintiff had worked eighty (80) hours in the previous pay period.

17. Plaintiff immediately brought this discrepancy to Fowler's attention. Fowler responded by stating, "it will all even out in the future; I do not pay overtime" – or words to that effect.

18. On or about October 10, 2016, Defendants changed Plaintiff's job title to "Collections Manager".

19. Despite Plaintiff's classification as a "manager," Defendants compensated Plaintiff at the rate of Ten Dollars and 00/100 ($10.00) per hour plus monthly sales commissions.

20. As Collections Manager, Plaintiff's job duties included e-mailing, calling, texting, or otherwise physically contacting customers/account holders to collect outstanding payments for prior purchases.

21. Due to the nature of Plaintiff's position, Plaintiff often utilized her personal cell phone for work-related collections calls. In fact, Defendants (specifically, Fowler) encouraged Plaintiff to utilize her personal cell phone to make collections calls due to the likelihood of customers/account holders ignoring calls from Badcock Cleveland's business telephone number.

22. Additionally, Badcock Cleveland's computer system did not allow its employees access to work e-mails. Accordingly, Plaintiff had no choice but to utilize her personal cell phone to send e-mails to customers/account holders regarding outstanding payments.

23. In sum, Plaintiff had no choice but to utilize her personal cell phone on a daily basis to perform the essential functions of her job as Collections Manager.

B. **Plaintiff discovers she has cancer.**

24. On or about September 26, 2016, after undergoing a biopsy of a mass below her jawline, Plaintiff discovered she may have Stage 1 Parotid cancer.

25. Within twenty-four (24) hours, Plaintiff's physician scheduled invasive surgery.

26. Immediately after receiving her suspected diagnosis, Plaintiff informed Defendants, advising Fowler of her need for surgery and radiation therapy.

27. Fowler was not pleased because Plaintiff did not provide him with a return-to-work date. Furthermore, Fowler advised Plaintiff she would have to attend any and all medical appointments: (i) on her days off work; (ii) outside normal store hours; or (iii) during lunch breaks.

28. As a result, on September 26, 2016, Plaintiff granted John L. Gwin, Jr., M.D. ("Dr. Gwin"), permission to speak with Fowler regarding Plaintiff's need for time away from work to undergo surgery.

29. On or about October 10, 2016, Plaintiff underwent surgery to remove the tumor.

30. On or about October 11, 2016, the day after surgery, Fowler contacted Dr. Gwin's office and angrily inquired as to why Plaintiff had not returned to work. Fowler understood the surgery to be an "outpatient procedure" and did not understand why Plaintiff could not return to work.

31. Dr. Gwin's receptionist advised Fowler that Dr. Gwin would not release Plaintiff to return to work for a minimum of one (1) week due to Plaintiff's status as a hospital inpatient.

32. On or about November 14, 2016, pathology results indicated the removed tumor was, in fact, cancerous. As a result, Plaintiff would have to undergo radiation therapy.

33. On or about December 5, 2016, Plaintiff began radiation therapy. Per her doctor's orders, Plaintiff was to undergo radiation therapy five (5) times per week for six (6) weeks.

34. Athens Regional Cancer Center scheduled Plaintiff's radiation appointments for Monday through Friday, beginning at nine o'clock (9:00 AM), and lasting fifteen (15) to twenty (20) minutes per session.

35. Within twenty-four (24) hours of receiving her radiation-appointment schedule, Plaintiff provided Defendants with a doctor's note and informed Defendants of her need to attend radiation therapy as well as other post-operative appointments.

36. Again, Fowler was not pleased. Fowler refused to allow Plaintiff time away from work to attend radiation therapy. Instead, despite Dr. Gwin's orders, Fowler reiterated to Plaintiff she would have to attend radiation therapy: (i) on her days off work; (ii) outside normal store hours; or (iii) during lunch breaks.

37. As a direct and proximate result of the radiation treatments, Plaintiff was often ill during the first three (3) weeks of her therapy. As a result, Plaintiff had to leave work early on two occasions between December 5, 2016, and December 22, 2016.

**C.** **<u>Defendants separate Plaintiff's employment for "attendance issues."</u>**

38. On or about December 22, 2016, during the middle of radiation therapy, Plaintiff called in sick to work.

39. One (1) hour after calling in sick, Plaintiff received a telephone call from Fowler.

40. During this telephone call, Fowler terminated Plaintiff's employment for "attendance issues," stating "I'm sick, and I'm here anyways" – or words to that effect.

41. Prior to the December 22, 2017, telephone call, Defendants had never reprimanded Plaintiff for any alleged "attendance issues."

42. At all times material hereto, Plaintiff's alleged "attendance issues" were a direct and proximate result of Plaintiff's tumor-removal surgery, radiation therapy, and illnesses arising therefrom.

43. After terminating Plaintiff's employment, Fowler stated, "let me ask you a question. Were you applying for other jobs while you were on the clock?" – or words to that effect. Fowler informed Plaintiff that: (i) Assistant Manager Aaron Gray ("Gray") tattled on Plaintiff for allegedly using her personal cell phone to apply for other jobs while on the clock; and (ii) Defendants possessed video footage of Plaintiff using her personal cell phone while at work.

44. Upon information and belief, the alleged "video footage" shows Plaintiff utilizing her personal cell phone at work; it does not show Plaintiff applying for other jobs while on the clock.

45. As made clear in paragraphs 18-23 herein, Plaintiff had no choice but to utilize her personal cell phone to satisfy her job requirements.

46. Accordingly, Plaintiff responded to Fowler that: (i) she used her personal cell phone daily for work-related collections calls, texts, and emails; (ii) she had never applied for other jobs while on the clock; and (iii) she only applied for other jobs while off the clock.

47. By separating Plaintiff's employment for "attendance issues" directly and proximately related to Plaintiff's cancer treatment, Defendants discriminated against Plaintiff on the basis of her disability and/or perceived disability.

**D.** **<u>Defendants falsify their reasons for separating Plaintiff's employment.</u>**

48. Defendants failed to provide Plaintiff with a separation notice within the time period prescribed by law.

49. As a result, Plaintiff obtained a blank separation notice from her local Department of Human Services ("DHS") and requested Defendants execute the blank notice so as to allow Plaintiff to apply for unemployment benefits.

50. Three (3) days later, Plaintiff contacted Defendants, inquiring as to the status of her separation notice. Fowler advised Plaintiff that the notice was not ready because "his lawyers were reviewing it" – or words to that effect.

51. Plaintiff ultimately received the executed separation notice from DHS. However, despite Fowler advising Plaintiff that Defendants separated her employment for "attendance issues," Plaintiff's separation notice inaccurately states Defendants separated Plaintiff's employment for "looking for other jobs on company time." **[See Exhibit "3" attached hereto and incorporated herein by reference]**.

52. Fowler's nephew, Dilan Fowler, a sales associate for Cleveland Badcock, regularly used his personal cell phone for non-work-related matters. However, Defendants never reprimanded Fowler's nephew for such behavior. Upon information and belief, Defendants never reprimanded Fowler's nephew for this behavior because Dilan Fowler is: (i) male; and (ii) a family member.

53. Fowler's other nephew, Logan Fowler, a sales associate for Cleveland Badcock, also regularly used his personal cell phone for non-work-related matters. However, Defendants never reprimanded Fowler's nephew for such behavior. Upon information and belief, Defendants never reprimanded Fowler's nephew for this behavior because Dilan Fowler is: (i) male; and (ii) a family member.

E. **Gray contradicts himself.**

54. Despite Gray's allegation to Fowler that Plaintiff was utilizing her personal cell phone to apply for other jobs while on the clock, Gray later contradicted himself while under oath during a telephonic hearing before the Appeals Tribunal for the Tennessee Department of Labor and Workforce Development, Division of Employment Security.

55. During the hearing, Gray initially testified he approached Plaintiff at her desk, "actively typing" on her cell phone. Upon approaching Plaintiff, Gray testified Plaintiff showed him a job for which she had recently applied.

56. However, Gray later testified Plaintiff showed him a completed job application, stating: (i) he had "no evidence" of when Plaintiff actually started the application; and (ii) he "never saw her [Plaintiff] fill out the applications."

### F. Defendants violate the FLSA.

57. During Plaintiff's employment with Cleveland Badcock, Plaintiff often worked in excess of forty (40) hours per week without overtime compensation.

58. For example, due to the nature of Plaintiff's position as Collections Manager, Plaintiff regularly utilized her personal cell phone at home (off the clock) to return calls, text messages, and e-mails regarding past due accounts. Defendants were aware of and/or actively encouraged Plaintiff to work off the clock while at home (or otherwise away from her place of employment and without pay).

59. Moreover, Plaintiff would regularly stay thirty (30) minutes to one (1) hour after closing time to make and/or return calls, text messages, and e-mails regarding past due accounts.

60. On one such occasion, Fowler requested Plaintiff design flyers for an open house at Cleveland Badcock. Plaintiff spent approximately twenty (20) hours designing three (3) sample flyers. However, upon presenting the flyers to Defendants, Fowler advised Plaintiff he had decided to go with an advertising company instead. Defendants did not pay Plaintiff for her work designing the flyers.

61. Defendant failed to compensate Plaintiff for any of the foregoing, work-related activities at a rate of one and one-half times Plaintiff's regular rate of pay (or at all).

62. Such failure directly violates the FLSA's overtime provisions.

63. As a direct and proximate result of Defendants' actions in violation of the ADAAA, FLSA, TDA, THRA, and Title VII, Plaintiff has suffered injuries and damages and is entitled to the relief as set forth more fully herein.

## IV. CLAIMS FOR RELIEF

### COUNT I

<u>Disability Discrimination</u>
(*Tennessee Disability Act ("TDA"), Tenn. Code Ann. § 8-50-103*)

64. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-63 herein, inclusive.

65. Plaintiff pleads herein additionally and alternatively to all other causes of action alleged in this Complaint, as may be amended.

66. At the time Defendants separated Plaintiff's employment, Plaintiff suffered from a physical impairment. Specifically, Plaintiff suffered from cancer, including the debilitating side effects of radiation therapy.

67. Plaintiff's physical impairment substantially limited Plaintiff in the major life activities of walking, standing, running, lifting, bending, concentrating, processing information, or otherwise physically moving or thinking.

68. Plaintiff was otherwise qualified for her job with the reasonable accommodation of time away from work to undergo surgery and attend radiation treatments for the duration of six (6) weeks.

69. Plaintiff suffered an adverse employment action through her separation of employment.

70. By separating Plaintiff's employment, Defendants discriminated against Plaintiff on account of her disability.

71. In the alternative, Defendants discriminated against Plaintiff on account of "being regarded as having such an impairment." *See* 42 U.S.C. § 12102(1)(C).

72. Due to Plaintiff's tumor-removal surgery, radiation therapy, and illnesses arising therefrom, Plaintiff missed several days of work.

73. Defendants separated Plaintiff's employment approximately one (1) hour after Plaintiff called in sick as a result of radiation treatment on December 22, 2016.

74. Upon information and belief, at the time of Plaintiff's separation of employment, Defendants perceived Plaintiff as having a physical impairment that substantially limited Plaintiff in the performance of her job duties, i.e., inability to come to work regularly. This belief was misplaced and otherwise untrue. Plaintiff missed a very finite amount of work due to treatment and resulting side effects arising from her cancer diagnosis.

75. By separating Plaintiff's employment, Defendants discriminated against Plaintiff on account of her disability or perceived disability.

76. The foregoing conduct constitutes disability discrimination in violation of the TDA.

77. As a direct and proximate result of Defendants' disability discrimination in violation of the TDA, Plaintiff has suffered injuries and damages and is entitled to relief as set forth more fully herein.

## COUNT II

Disability Discrimination, Failure to Reasonably Accommodate, and Retaliation
(*Americans With Disabilities Act Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101, et seq.*)

78. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-77 herein, inclusive.

79. Plaintiff pleads herein additionally and alternatively to all other causes of action alleged in this Complaint, as may be amended.

80. At the time Defendants separated Plaintiff's employment, Plaintiff suffered from a physical impairment. Specifically, Plaintiff suffered from cancer, including the debilitating side effects of radiation therapy.

11
Case 1:17-cv-00346-TAV-CHS   Document 1   Filed 12/13/17   Page 11 of 16   PageID #: 11

81. Plaintiff's physical impairment substantially limited Plaintiff in the major life activities of walking, standing, running, lifting, bending, concentrating, processing information, or otherwise physically moving or thinking.

82. Plaintiff was otherwise qualified for her job with the reasonable accommodation of time away from work to undergo surgery and attend radiation treatments for the duration of six (6) weeks.

83. Plaintiff suffered an adverse employment action through her separation of employment.

84. By separating Plaintiff's employment, Defendants discriminated and retaliated against Plaintiff on account of her disability and her attempts to take off reasonable time away from work due to (i) surgery to remove her cancer; (ii) radiation therapy to eradicate any malignant cells not removed during surgery; and (iii) illness which was the side effect of radiation therapy.

85. In the alternative, Defendants discriminated against Plaintiff on account of "being regarded as having such an impairment." *See* 42 U.S.C. § 12102(1)(C).

86. Due to Plaintiff's tumor-removal surgery, radiation therapy, and illnesses arising therefrom, Plaintiff missed several days of work.

87. Defendants separated Plaintiff's employment approximately one (1) hour after Plaintiff called in sick as a result of radiation treatment on December 22, 2016.

88. Upon information and belief, at the time of Plaintiff's separation of employment, Defendants perceived Plaintiff as having a physical impairment that substantially limited Plaintiff in the performance of her job duties, i.e., inability to come to work regularly. This belief was misplaced and otherwise untrue. Plaintiff missed a very finite amount of work due to treatment and resulting side effects arising from her cancer diagnosis.

89. By separating Plaintiff's employment, Defendants discriminated and retaliated against Plaintiff on account of her disability or perceived disability.

90. The foregoing conduct constitutes disability discrimination in violation of the ADAAA.

12
Case 1:17-cv-00346-TAV-CHS    Document 1    Filed 12/13/17    Page 12 of 16    PageID #: 12

91. As a direct and proximate result of Defendants' disability discrimination and retaliation in violation of the ADAAA, Plaintiff has suffered injuries and damages and is entitled to relief as set forth more fully herein.

## COUNT III

### Sex Discrimination
(Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*. and *Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-401, et seq.*)

92. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-91 herein, inclusive.

93. Plaintiff pleads herein additionally and alternatively to all other causes of action alleged in this Complaint, as may be amended.

94. Plaintiff is female. Accordingly, Plaintiff is a member of a protected class.

95. At all times material hereto, Plaintiff was qualified for her position.

96. Defendants initially hired Plaintiff to serve as the "Assistant Manager" of Cleveland Badcock before ultimately naming Plaintiff "Collections Manager."

97. At all times material hereto, Gray (a male employee) also served as the "Assistant Manager" of Cleveland Badcock.

98. As "managers," Plaintiff and Gray were supposed to share the same authority and job-related responsibilities.

99. However, despite Plaintiff's classification as a "manager," Defendants did not treat her as such. For example, Defendants: (i) regularly ignored Plaintiff's suggestions/recommendations; (ii) undermined Plaintiff's authority when she attempted to discipline her subordinates; and (iii) otherwise prevented Plaintiff from "managing" Cleveland Badcock.

100. Upon information and belief, Defendants did not undermine Gray's authority, and, in fact, allowed Gray to "manage" Cleveland Badcock. Moreover, Defendant failed to provide Plaintiff with a

store key after her ninety (90) day probationary period and never afforded Plaintiff the opportunity to close Cleveland Badcock as an acting manager.

101. Upon information and belief, Defendant provided Gray with a store key after his ninety (90) day probationary period and afforded Gray the opportunity to close Cleveland Badcock as an acting manager.

102. In sum, Plaintiff was a manager in name only.

103. Upon information and belief, Defendants treated Plaintiff in a disparate manner, as compared to its similarly-situated, male employees (i.e., Gray), due to Plaintiff's status as a female.

104. Such behavior constitutes discrimination on the basis of sex in violation of Title VII and the THRA.

105. As a direct and proximate result of Defendants' discrimination on the basis of sex, Plaintiff has suffered injuries and damages and is entitled to relief as set forth more fully herein.

## COUNT IV

Failure to Pay Overtime Wages
(*Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 207*)

106. Plaintiff re-alleges and incorporates by reference each averment set forth in paragraphs 1-105 herein, inclusive.

107. At all times material hereto, Defendants employed one (1) or more individuals engaged in interstate commerce as defined by 29 U.S.C. § 203(b).

108. At all times material hereto, Defendants employed Plaintiff as a "manager" of Cleveland Badcock but compensated Plaintiff hourly at the rate of Ten Dollars and 00/100 ($10.00) per hour plus monthly sales commissions.

109. Accordingly, Plaintiff was an FLSA non-exempt employee entitled to overtime compensation.

110. Despite her status as an FLSA non-exempt employee, Defendants knowingly and improperly failed to compensate Plaintiff for work suffered or permitted in excess of forty (40) hours per week at a rate of one and one-half times Plaintiff's regular rate of pay (or at all).

111. In fact, on August 19, 2016, Fowler expressly informed Plaintiff he "did not pay overtime" – or words to that effect.

112. Defendants' failure to pay Plaintiff overtime compensation, as set forth herein, constitutes a willful violation of the FLSA's overtime provisions. *See* 29 U.S.C. § 207.

113. Defendants' failure to pay Plaintiff overtime compensation was intentional, with reckless disregard for their responsibilities under the FLSA and/or without good cause. Defendants are liable for liquidated damages in an amount equal to the unpaid overtime compensation pursuant to 29 U.S.C. § 216(b).

114. As a direct and proximate result of Defendants' failure to pay Plaintiff overtime compensation for work suffered or permitted in excess of forty (40) hours per week, Plaintiff has suffered injuries and damages and is entitled to relief as set forth more fully herein.

## V. DAMAGES

115. Plaintiff re-alleges and incorporates by reference each averment of paragraphs 1-114 herein, inclusive.

116. As a direct and proximate result of each of the foregoing acts, conduct, and violations of the law as alleged herein, Plaintiff has suffered damages in an amount and according to proof, including, without limitation, loss of employment, lost wages, loss of benefits, lost interest on benefits, actual monetary loss, liquidated damages, physical and mental pain and suffering, embarrassment, humiliation, inconvenience, and other incidental and consequential damages.

117. Plaintiff is entitled to, and seeks, recovery of her attorneys' fees and costs pursuant to the ADAAA, FLSA, TDA, THRA, and Title VII.

118. Plaintiff seeks an award of pre- and post-judgment interest as permitted by law.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1. Compensatory damages in an amount to be awarded by a jury, not less than **ONE HUNDRED AND FIFTY THOUSAND DOLLARS AND 00/100 ($150,000.00).**

2. Liquidated damages in an amount to be awarded by a jury, not less than **TEN THOUSAND DOLLARS AND 00/100 ($10,000.00).**

3. Attorneys' fees and costs;

4. Incidental and/or consequential damages in an amount to be determined by a jury; and

5. Any and all further relief this Honorable Court deems just and appropriate.

Respectfully submitted, this 13th day of December 2017.

**BRANDY DUNCAN**

By: /s/ James W. Friauf
James W. Friauf (#027238)
Ariana E. L. Mansolino (#035237)
LAW OFFICE OF JAMES W. FRIAUF, PLLC
9724 Kingston Pike, Suite 104
Knoxville, Tennessee 37922
Tele: (865) 236-0347
Fax: (865) 512-9174
Email: james@friauflaw.com
Our File No.: 17-135-EPL

*Attorneys for Plaintiff, Brandy Duncan*